UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x

BARRY A. GREEN,

                Petitioner,

    - against -

WILLIAM F. KEYSER,

                Respondent.

------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/1/2017

15-CV-00932
(TPG)

**OPINION**

Before this court is a petition for habeas corpus pursuant to 28 U.S.C. § 2254 (2012). Petitioner Barry A. Green, an inmate at the Woodbourne Correctional Facility, files this petition *pro se* seeking habeas relief for his conviction of first-degree promoting prison contraband. ECF No. 1.

Petitioner was convicted, after a jury trial in Sullivan County Court, of first-degree promoting prison contraband on February 4, 2011. ECF No. 1, at 20. On February 23, 2012, the County Court found that, because the above-mentioned conviction was Petitioner's second felony conviction, he would serve a three-to-six year prison term running consecutively with the 15-year-to-life sentence that he was already serving for a prior second-degree murder conviction. ECF No. 12, at 7. The County Court denied Petitioner's motion to set aside the jury verdict pursuant to New York Criminal Procedure Law § 330.30 (McKinney 2017), and the Appellate Division affirmed Petitioner's conviction upon direct appeal. *People v. Green*, 984 N.Y.S.2d 680 (N.Y. App. Div. 3d Dep't

1

2014); *see also* ECF No. 12, at 7-8. The New York Court of Appeals denied Petitioner's application for leave to appeal on August 25, 2014. *People v. Green*, 18 N.E.3d 1142 (N.Y. 2014).

Petitioner filed the instant petition for habeas relief on February 6, 2015. ECF No. 1. In his petition, he claims that (1) he was deprived of his right to testify before the grand jury; (2) the verdict was not supported by legally sufficient evidence; (3) the County Court's jury instructions were improper; and (4) he had ineffective assistance of trial counsel. ECF No. 1; ECF No. 12, at 10-11. Upon consideration of each claim, the court denies the requested relief in its entirety.

## BACKGROUND

### I.    Facts Giving Rise to Petitioner's Conviction

The facts of the case, as recounted by the prosecution as well as the Appellate Division's decision affirming Petitioner's conviction, are as follows.

On September 9, 2009, Petitioner, an inmate at Woodbourne Correctional Facility in Sullivan County ("Woodbourne") serving his sentence for second-degree murder, was found using a cell phone inside his prison cell. ECF No. 12, at 3; *People v. Green*, 984 N.Y.S.2d 680, 681 (N.Y. App. Div. 3d Dep't 2014). A corrections officer named Randy Hendrickson was making his daily rounds that day when he noticed that there was a towel covering Petitioner's cell window. ECF No. 12, at 4. When he stopped in front of Petitioner's cell, he could hear Petitioner talking to somebody in a formal manner. ECF No. 12, at 4. After Hendrickson checked the adjoining cells and found the cells empty, he notified his supervisor, Sergeant Tammy Chaboty. ECF No. 12, at 4.

Upon being notified, Chaboty entered Petitioner's cell with several other corrections officers. ECF No. 12, at 4. They conducted a thorough search of the cell. ECF No. 12, at 4. Officer James Duesler found a cell phone charger in Petitioner's bed. ECF No. 12, at 5. Inside Petitioner's shoe he also found a piece of paper with phone numbers and a password written on it. ECF No. 12, at 5.

While Petitioner's cell was being searched, Chaboty stayed with Petitioner in a separate room. ECF No. 12, at 5. Chaboty asked Petitioner if he had any contraband on him, and Petitioner denied having any. ECF No. 12, at 5. After discovering the charger and the piece of paper, Duesler took Petitioner to a private area to perform a "strip frisk"—a procedure involving Petitioner removing his clothing so that the officers could search his body for hidden items. ECF No. 12, at 4. Upon removing his underwear, Petitioner "pulled out a Motorola cell phone from his buttocks" and gave it to the officer. ECF No. 12, at 5; *see also Green*, 984 N.Y.S.2d at 681. The officer gave the phone to Chaboty who then inputted the passcode to unlock the phone. ECF No. 12, at 5.

Because cell phones are strictly prohibited inside Woodbourne, after the officers uncovered the cell phone, on October 1, 2009, Petitioner met with Andres Roman—an investigator with the New York State Department of Corrections Inspector General's Office—for an interview. ECF No. 12, at 3, 5. Roman read Petitioner his *Miranda* rights, and Petitioner waived them to verbally answer questions. ECF No. 12, at 5. He told Roman that he had purchased the cell phone for $500 so he could speak to his wife, with whom he was having marital

troubles. ECF No. 12, at 5-6. He did not want anyone at Woodbourne monitoring or recording his calls. ECF No. 12, at 6.

## II.   State Court Proceedings

### A.   Trial

Petitioner was indicted and charged with one count of first-degree promotion of prison contraband. *Green*, 984 N.Y.S.2d at 681. During the trial, James Walsh, the supervising superintendent for Woodbourne and six other correctional facilities, testified regarding procedures for inmate phone calls at Woodbourne. ECF No. 12, at 6-7; *Green*, 984 N.Y.S.2d at 683-84.

Walsh testified about the strict no cell phone policy, and how the policy is in place to ensure that inmates would not bypass Woodbourne's call monitoring and recording system. ECF No. 12, at 6. Under Woodbourne's monitoring system, inmates are required to list the names and phone numbers of the people they wish to call. ECF No. 12, at 6. Inmates are limited to a list of 15 people and can only call those on the list between 7:00am and 11:00pm. ECF No. 12, at 6. Walsh testified that the "ability to bypass the monitoring system by using a cell phone poses an even greater risk of inmates conducting criminal activities or developing escape plans." ECF No. 12, at 6. He also testified that cell phone privileges are occasionally offered as a reward for good behavior. ECF No. 12, at 7. Walsh then stated that Petitioner at no time had authorization to purchase or use a cell phone. ECF No. 12, at 7. Petitioner did not call any witnesses to the stand. ECF No. 12, at 7.

The jury convicted Petitioner on February 3, 2011, and after several adjournments, Petitioner was sentenced to a secondary prison term of three to six years, to be served consecutively with the sentence he was serving for his second-degree murder conviction. ECF No.12, at 7; *Green,* 984 N.Y.S.2d at 682. Before he was sentenced, Petitioner moved pursuant to New York Criminal Procedure Law § 330.30 (McKinney 2017) to set aside the jury's verdict. ECF No. 12, at 7. In his motion, he claimed that the evidence was not legally sufficient to sustain the verdict. ECF No. 12, at 7. The County Court denied the motion. ECF No. 12, at 7.

### B.    Appeal

Petitioner appealed his conviction to the Appellate Division, claiming that (1) his conviction was not supported by legally sufficient evidence; (2) he was deprived of a fair trial because of improper jury instructions; and (3) he was denied his right under state and federal law to testify before the grand jury. ECF No. 12, at 8. Additionally, Petitioner, filing *pro se,* argued three claims: (1) he was denied the right to testify before the grand jury; (2) his indictment was illegal; and (3) he had ineffective assistance of counsel. ECF No. 12, at 8.

On May 8, 2014, the Appellate Division affirmed Petitioner's conviction. *Green,* 984 N.Y.S.2d at 680. With respect to the legal sufficiency claim, in which Petitioner claimed that the prosecution failed to establish the phone was "dangerous contraband," the Appellate Division found that the cell phone did constitute "dangerous contraband" because it was "capable of such use as may endanger the safety or security of a detention facility or any person therein." *Id.*

at 682. The Appellate Division found that "the item in question need not be inherently dangerous in order to qualify as dangerous contraband" and that "[b]ased upon [its] review of the record as a whole—particularly the detailed and specific testimony offered by the supervising superintendent—[the court was] satisfied that the [prosecution] met their burden of establishing that the cell phone seized from [Petitioner] constituted dangerous contraband." *Id.* at 682-84.

Secondly, regarding Petitioner's claim that the County Court's jury instructions were erroneous, the Appellate Division found that the claim was not preserved for appellate review because Petitioner failed to object to the jury instructions during trial. *Id.* at 685 ("[Petitioner's] assertions that County Court improperly instructed the jury as to the definition of dangerous contraband in the first instance and thereafter failed to meaningfully respond to the jury's requests for further instruction also are unpreserved for our review, as the record reveals that defendant raised no objections thereto."). The Appellate Division found that even if it was preserved, the claim had no merit because the instructions "in large measure" followed the Model Jury Charge for the charge of promoting prison contraband. *Id.* The Appellate Division also held that Petitioner's claim that he was denied his statutory right to appear and testify before the grand jury was procedurally barred and waived because he "failed to move to dismiss the indictment upon this ground within five days of his arraignment thereon." *Id.*

Lastly, the Appellate Division denied Petitioner's ineffective assistance of counsel claim, stating that the claims were either based on "matters outside of

the record" or that they were meritless. *Id.* at 686. The court found that counsel "filed an omnibus motion, presented a cogent trial strategy, effectively cross-examined the [prosecution's] witnesses, made relevant objections and articulated coherent opening and closing statements," and that this was "meaningful representation." *Id.*

After the Appellate Division issued its Opinion, Petitioner, through counsel, filed an application for leave to appeal to the New York Court of Appeals on the sufficiency of evidence claim. ECF No. 12, at 10; ECF No. 13, Ex. 8, at 87. Petitioner additionally filed a *pro se* letter requesting leave to appeal the *pro se* claims: that he was denied the right to testify before the grand jury; his indictment was illegal; and he had ineffective assistance of counsel. ECF No. 12, at 10; ECF No. 13, Ex. 8, at 88. On August 25, 2014, the Court of Appeals denied leave to appeal with respect to all claims. *People v. Green,* 18 N.E.3d 1142 (N.Y. 2014).

### III.    28 U.S.C. § 2254 Petition

Petitioner filed the instant petition for habeas corpus pursuant to 28 U.S.C. § 2254 on February 6, 2015. ECF No. 1. In his petition, he claims that (1) he was deprived of his right to testify before the grand jury; (2) the verdict was not supported by legally sufficient evidence; (3) the County Court's jury instructions were improper; and (4) he had ineffective assistance of trial counsel. ECF No. 1; ECF No. 12, at 10-11.

The petition was originally assigned to Judge Loretta A. Preska, was later reassigned to Judge Vincent L. Briccetti, and was again reassigned to the

undersigned Judge on September 26, 2017. This court now considers and evaluates the above-mentioned claims.

## LEGAL STANDARD

### I. Procedural Bar

#### A. Cognizable Claims

Only federal constitutional claims are cognizable upon federal habeas review. 28 U.S.C. § 2254(a) (2012). Federal courts can only "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court" if the person is in custody is "in violation of the *Constitution or laws or treaties of the United States.*" *Id.* (emphasis added).

The Fifth Amendment's right to indictment by a grand jury has not been incorporated against the states by the Due Process Clause of the Fourteenth Amendment. *LanFranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002). Thus, states have the option of requiring grand jury indictments in their courts. *See Fields v. Soloff*, 920 F.2d 1114, 1118 (2d Cir. 1990). In the state of New York, Article I of New York's state constitution creates a right to indictment by grand jury for felony charges, stating that "[n]o person shall be held to answer for a capital or otherwise infamous crime . . . unless on indictment of a grand jury." N.Y. Const. art. 1, § 6. Because this right arises out of the state constitution, state law governs grand jury procedures and requirements. *Price v. Grenier*, No. 98-CV-2601 (LTS) (MHD), 2003 WL 22890404, at *6 (S.D.N.Y. Oct. 16, 2003) (collecting cases holding that state grand jury claims are "purely a matter of state law").

8

Thus, claims regarding "deficiencies in state grand jury proceedings" are not cognizable habeas claims because they are not issues of constitutional dimension, but are rather state law claims. *Davis v. Mantello*, 42 F. App'x 488, 490 (2d Cir. 2002) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court."); *see also Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) ("[C]laims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court."); *Afflic v. New York*, No. 01-CV-6152 (JSM), 2002 WL 500373 (S.D.N.Y. Apr. 3, 2002) ("Petitioner's claim that he was not advised of his right to appear before the Grand Jury does not present an issue of constitutional dimension, but merely one of state law."). Petitioner's right to testify before a grand jury is based exclusively on state law, and thus "denial of that right does not entitle him to a *federal* writ of habeas corpus." *McMoore v. Miller*, No. 98-CV-1915 (LEK) (GLS), 2002 WL 975305, at *9 (N.D.N.Y. Apr. 19, 2002).

Further, any petition for habeas relief claiming error in grand jury proceedings is rendered harmless by a subsequent guilty verdict. *United States v. Mechanik*, 475 U.S. 66, 70-71 (1986). "[A] petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt." *Lopez*, 865 F.2d at 32 (quoting *Mechanik*, 475 U.S. at 70). Thus, any error in grand jury proceedings that pertain to charging become harmless and are not cognizable on direct appeal upon a guilty verdict. *Id.* This is true for both federal grand jury and state grand jury proceedings. *Id.*

**B.     Exhaustion Requirement**

A prisoner convicted by a state court must exhaust all available state judicial remedies before a federal court can review a petition for habeas corpus. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *see also* 28 U.S.C. § 2254(b)(1)(A) (stating that "[a]n application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State"). This rule is premised on comity, and ensures that "state courts have an opportunity to consider and correct any violations of their prisoner's federal constitutional rights." *Diaz v. Greiner*, 110 F. Supp. 2d 225, 229 (S.D.N.Y. 2000) (quoting *Warren v. McClellan*, 942 F. Supp. 168, 170 (S.D.N.Y. 1996)).

In order to satisfy the exhaustion requirement, a petitioner must "present[] the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003). The petitioner must "fairly present[]" the federal claim in state court, and by doing so, sufficiently alert the court to the federal claim. *Picard*, 404 U.S. at 275; *Daye v. Attorney General*, 696 F.2d 186, 192 (2d Cir. 1982) (en banc). The petitioner must "fairly apprise the court" of the claims and cannot "presume that state judges are clairvoyant." *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (quoting *Petrucelli v. Coombe*, 735 F.2d 684, 689 (2d Cir. 1984)).

Not only does the claim have to be fairly presented, it must also be presented as a claim with a "constitutional dimension." *McFarland v. Scott*, 512 U.S. 849, 861 (1994). The petitioner can use "pertinent federal cases employing

constitutional analysis" or "state cases employing constitutional analysis in like fact situations." *Daye*, 696 F.2d at 194. The claim must be "couched in constitutional terms or language" that demonstrates to the court that it is a federal constitutional claim rather than a state law claim. *Diaz*, 110 F. Supp. 2d at 229. Merely raising a similar claim is not enough—the petitioner must have raised the specific federal claim in the state courts in order to satisfy this exhaustion requirement.

Even in cases where a habeas petition includes both exhausted and unexhausted claims, under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." Section 2254(b)(2) "does not provide a standard for determining when a court should dismiss a petition on the merits rather than requiring complete exhaustion," and neither the Supreme Court nor the Second Circuit have established a standard for when to require complete exhaustion. *Otero v. Stinson*, 51 F. Supp. 2d 415, 420-21 (quoting *Lambert v. Blackwell,* 134 F.3d 506, 514 (3d Cir. 1997)).

Although federal courts have discretion to determine whether or not to require exhaustion, several courts in this Circuit have found that exhaustion in state courts is required unless the claim is "patently frivolous." *See Hammock v. Walker*, 224 F. Supp. 2d 544, 549 (W.D.N.Y. 2002) ("[C]ourts [can] deny habeas petitions that contain unexhausted claims that are deemed patently frivolous."); *Cuadrado v. Stinson*, 992 F. Supp. 685, 687 (S.D.N.Y. 1998) ("[The AEDPA] now

gives this Court the discretion to deny (but not grant) unexhausted petitions on the merits . . . . Perhaps such discretion would be appropriate where a petition was 'patently frivolous.' " (quoting *Rodriguez v. Miller*, No. 96-CV-4723, 1997 WL 599388, at *3 (S.D.N.Y. Sept. 29, 1997))); *Naranjo v. Filion*, No. 02-CV-5449 (WHP) (AJP), 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003) ("Although the Second Circuit has yet to enunciate a standard for determining when unexhausted claims should be denied on the merits, the majority of district court decisions in this Circuit have embraced a 'patently frivolous' test for dismissing unexhausted claims.").

### C. Adequate and Independent State Grounds

If the state court decided a claim on state law grounds "independent of the federal question[s]" raised that are also "adequate to support the [state court] judgment," a federal court should refrain from addressing the claim on habeas review. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Although originally applied to direct appeals of state court judgments to the Supreme Court, the Supreme Court has also applied this independent and adequate state ground doctrine to state prisoner habeas petitions. *Lee v. Kemna*, 534 U.S. 362, 375 (2002) ("We first developed the independent and adequate state ground doctrine in cases on direct review from state courts, and later applied it as well 'in deciding whether federal district courts should address the claims of state prisoners in habeas corpus actions.' " (quoting *Coleman*, 501 U.S. at 729)).

The adequate and independent state grounds doctrine arises regardless of "whether the state law ground is substantive or procedural." *Coleman*, 501 U.S.

at 729. If a state court " 'clearly and expressly' states that its judgment rests on a state procedural bar" this constitutes an independent and adequate state ground, and the federal court must deny habeas relief. *Harris v. Reed,* 489 U.S. 255, 263 (1989) (quoting *Caldwell v. Mississippi,* 472 U.S. 320, 327 (1985)). Unlike direct appeal, however, a state procedural default with respect to a habeas case may be excused if the petitioner can show either (1) cause and actual prejudice, or (2) that a "fundamental miscarriage of justice" will result. *Coleman,* 501 U.S. at 749-50. This is because the doctrine is based on prudential, rather than jurisdictional, grounds—it is in place "based on considerations of comity and finality." *Spence v. Superintendent, Great Meadow Corr. Facility,* 219 F.3d 162, 170 (2d Cir. 2000); *see also Lambrix v. Singletary,* 520 U.S. 518, 522-23 (1997).

To show cause, the petitioner must demonstrate that an external factor " 'impeded counsel's efforts' to raise the claim in state court" *McCleskey v. Zant,* 499 U.S. 467, 493 (1991) (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). In order to prove that there would be a miscarriage of justice, the petitioner must show that the state court likely convicted an innocent person, and prong is reserved for "extraordinary case[s]." *Murray v. Carrier,* 477 U.S. 478, 496 (1986). If a petitioner can demonstrate one of these two factors, then the district court may excuse a procedural default and get to the merits of the petitioner's claim.

In order to apply the adequate and independent state grounds doctrine, the state law ground must be "firmly established and regularly followed" in the state. *Lee,* 534 U.S. at 376 (quoting *James v. Kentucky,* 466 U.S. 341, 348

13

(1984)). Even if a ground is "firmly established," however, a federal court may analyze the merits of the claim if applying the adequate and independent state grounds doctrine would be "exorbitant." *Id.* To determine whether applying the doctrine would be "exorbitant" courts look at whether (1) the state ground was a procedural violation that the state court relied on and that changed the outcome of the case, (2) state case law suggests that the state law at hand applies in the specific factual context, and (3) whether petitioner did "substantially compl[y]" with the state law rule. *Cotto*, 331 F.3d at 240.

## II.    Substantive Review

A petition for habeas corpus with respect to persons in state custody when there has been a state court determination on the merits is governed by § 2254(d) of the AEDPA. 28 U.S.C. § 2254(d). The AEDPA "place[d] a new constraint" on the ability of federal courts to grant a state prisoner's petition, providing that writs of habeas corpus arising from a state court judgment "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* § 2254(d)(1) (emphasis added); *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

Thus, in order to prevail on a § 2254 claim, a habeas petitioner has the burden of proving that the state court decision was either "contrary to" or "involved an unreasonable application of" federal law. 28 U.S.C. § 2254(d)(1). Under the "contrary to" prong, a habeas petitioner must show that the state

court "arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or that the state court "decide[d] a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413. Under the "unreasonable application" prong, the petitioner has the burden of showing that the state court used the correct legal standard but "unreasonably applied" that standard to the specific facts of the case. *Id.* To show that a state court unreasonably applied the legal standard, the petitioner must show that the court applied federal law in an "objectively unreasonable manner"—*i.e.,* that it was an *unreasonable* rather than merely an *incorrect* application. *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002); *see also Williams,* 529 U.S. at 410 ("[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law.").

The determination that the state court decision was unreasonable rather than merely incorrect is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). Even in cases where a court may have reached a conclusion contrary to the state court, a federal court must deny habeas relief as long as the contrary conclusion was not unreasonable. *See Harrington v. Richter,* 562 U.S. 86, 102 (2011) ("[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). Further, the AEDPA requires that federal courts presume the correctness of state courts' factual findings unless the petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## DISCUSSION

As stated above, Petitioner raises four claims in his petition for habeas corpus relief: (1) he was deprived of his statutory right to testify before the grand jury; (2) his conviction was not supported by legally sufficient evidence; (3) improper jury instructions deprived him of a fair trial; and (4) his trial counsel provided ineffective assistance. ECF No. 1; ECF No. 12, at 10-11. The court analyzes each and finds that habeas relief should be denied as to all claims. With respect to the ineffective assistance claim, however, the court finds that the claim has been unexhausted but is not "patently frivolous," and thus declines to exercise its discretion to deny the claim on the merits.

## I.    Petitioner's Procedurally Barred Claims

Petitioner claims that he was (1) deprived of his right to testify before a grand jury; (2) deprived of his right to a fair trial because County Court's jury instructions were improper; and (3) deprived of effective assistance of counsel. ECF No. 1, at 6-12; ECF No. 12, at 12-14, 18-33. The court finds that these claims are barred on procedural grounds, and denies the requested habeas relief. The court finds that Petitioner's ineffective assistance of counsel claim is unexhausted, and denies relief for this claim without prejudice.

### A.    Grand Jury Testimony Claim

In his habeas petition, Petitioner argues that he was deprived of his statutory right to testify before the grand jury. ECF No. 1, at 8-9. He alleges that the prosecution "deliberately ignored his timely written request to testify before the grand jury in violation of [New York Criminal Procedure Law] § 190.50(5),"

and that this was a "blatant violation of the Due Process clause of the Fourteenth Amendment." ECF No. 1, at 8.

As stated above, the Fifth Amendment's right to indictment by a grand jury has not been incorporated against the states. *LanFranco,* 313 F.3d at 118. Thus, claims challenging grand jury proceedings in New York arise out of state law— more specifically, the New York state constitution and New York Criminal Procedure Law. Under Article I of the New York state constitution, defendants have the right to be tried only upon indictment by a grand jury. N.Y. Const. art. I, § 6. And under § 190.50(5) of the New York Criminal Procedure Law, a defendant has the right to testify at these grand jury proceedings. N.Y. Crim. P. Law § 190.50(5) (McKinney 2017). These are entirely state law claims and do not make out a federal constitutional claim.

In the instant action, Petitioner's claim is a purely state law claim—in fact, in his petition, he states that his claim pertained to a violation of New York Criminal Procedure Law § 190.50(5). ECF No. 1, at 8. Further, the Appellate Division's decision denying Petitioner's claim on appeal was based solely on state law grounds. *People v. Green,* 984 N.Y.S.2d 680, 685 (N.Y. App. Div. 3d Dep't 2014). The Appellate Division found that Petitioner "failed to move to dismiss the indictment . . . within five days of his arraignment" and "failed to establish that the letter he allegedly sent advising of his desire to testify was actually received by the District Attorney." *Id.* Both of these determinations pertain to requirements under New York Criminal Procedure Law § 190.50(5). *See id.*

The court finds that Petitioner's claim that he was deprived of his right to testify before a grand jury is not a cognizable habeas claim because it fails to allege any federal constitutional violation and is purely a state law claim. The court therefore denies habeas relief as to this claim.

**B.    Improper Jury Instruction Claim**

Petitioner also claims that the trial court's jury instructions as to the definition of "dangerous contraband" was improper and deprived him of a fair trial. ECF No. 1, at 18-25. The court finds that this claim is procedurally barred under the doctrine of adequate and independent state grounds.

Under New York Criminal Procedure Law § 470.05(2), a defendant in a New York state criminal trial must object to a matter that he or she contests during trial to preserve a claim for error in admission of evidence. *See* N.Y. Crim. P. Law § 470.05(2) ("For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same."); *People v. Gray,* 652 N.E.2d 919, 921 (N.Y. 1995) ("[I]n order to preserve a claim of error in the admission of evidence or a charge to the jury, a defendant must make his or her position known to the court."). This is referred to as the contemporaneous objection rule, and requires "at the very least, that any matter which a party wishes the appellate court to decide" be "brought to the attention of the trial court at the time and in a way that g[ives] the latter the opportunity to remedy the problem

and thereby avert reversible error." *People v. Luperon*, 647 N.E.2d 1243, 1246-47 (N.Y. 1995).

This rule is in place in order to "fairly apprise the court and the opposing party of the nature and scope of the matter contested, and to allow the necessary evidentiary treatment and trial-level advocacy to be pursued." *People v. Jones*, 440 N.Y.S.2d 248, 261 (N.Y. App. Div. 2d Dep't 1981). Thus, even generally objecting is not enough to preserve an issue on appeal. The defendant must, during the criminal trial, specifically object to the error for it to be preserved. *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007) ("New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must specifically focus on the alleged error."); *People v. West*, 436 N.E.2d 1313, 1313 (N.Y. 1982) ("Although a general protest was raised against this testimony, defendant at no time objected to this testimony on th[is] specific ground . . . . Thus, defendant has failed to preserve this issue for appellate review."). New York courts have consistently interpreted § 470.05(2) to require specific objections in trial courts in order to preserve that objection on appeal. *See Garvey*, 485 F.3d at 714-16.

The Supreme Court, as well as courts in this Circuit, have recognized the importance of state contemporaneous objection rules. In *Wainwright v. Sykes*, 433 U.S. 72, 88 (1977), the Supreme Court stated that contemporaneous objection rules serve "many interests" including "enabl[ing] the record to be made . . . when the recollections of witnesses are freshest," allowing judges to make "factual determinations necessary for properly deciding the federal constitutional

question," and contributing to the finality of the decision. The Second Circuit has also recognized that this rule services a legitimate interest, and has found that New York's contemporaneous objection rule is a procedural bar to federal habeas review. *See Peterson v. Scully*, 896 F.2d 661, 663 (2d Cir. 1990) ("If a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with [the] 'contemporaneous objection' rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review."); *see also Garcia v. Lewis*, 188 F.3d 71, 78-79 (2d Cir. 1999) ("We, too, have recognized the propriety of such rules . . . . [and] [a]s a result, we have observed and deferred to New York's consistent application of its contemporaneous objection rules.").

Here, Petitioner argues that the trial court's jury instructions as to the definition of "dangerous contraband" was improper and deprived him of a fair trial. ECF No. 1, at 18-25. In response to this claim on direct appeal, the Appellate Division found that this claim was "unpreserved for [its] review, as the record reveals that defendant raised no objections thereto." *Green*, 984 N.Y.S.2d at 685.

It is clear from the record that at no time did defense counsel make an objection to the jury instructions. When the parties concluded their closing statements, the County Court instructed the jury on the charge at hand—first-degree promoting prison contraband. ECF No. 12, at 18; ECF No. 14, Ex. 2, at 21-30. After reading the jury instructions, the County Court specifically asked the parties if there were "[a]ny objections, additions, corrections, [or] deletions,"

and each party affirmatively answered "[n]o." ECF No. 14, Ex. 2, at 30. The Appellate Division found that, as a result, the claim was barred under New York's contemporaneous objection rule, New York Criminal Procedure Law § 470.05(2). *Green*, 984 N.Y.S.2d at 685. This constitutes an adequate and independent state ground procedurally barring the claim unless Petitioner can show either cause and actual prejudice or a fundamental miscarriage of justice.

Petitioner can show neither cause and actual prejudice or a fundamental miscarriage of justice in the instant action. Petitioner has not alleged cause for failing to object to the jury instruction during trial, and thus fails to show cause and prejudice as to this claim. Further, Petitioner does not sufficiently demonstrate a fundamental miscarriage of justice because the jury instructions were found to be proper by the Appellate Division. The Appellate Division found that the County Court "in large measure . . . followed the Model Jury Charge for promoting prison contraband in the first degree . . . and subsequently provided clarification that was neither inconsistent nor confusing." *Green*, 984 N.Y.S.2d at 685. Petitioner has not met his burden of showing that this is an "extraordinary case" where the state court likely convicted an innocent person. *Murray*, 477 U.S. at 496.

Based on the doctrine of adequate and independent state grounds under New York Criminal Procedure Law § 470.05(2), the court declines to analyze the merits of Petitioner's erroneous jury instruction claim. The court denies habeas relief as to this claim.

## C.    Ineffective Assistance Claim

Petitioner claims that he was denied the effective assistance of counsel based on his trial counsel's failure to (1) investigate the facts of the case, (2) move to dismiss his indictment based on the denial of his right to testify before the grand jury, and (3) review trial documents with Petitioner. ECF No. 1, at 11; ECF No. 12, at 23-31. This court, like the Appellate Division, *Green*, 984 N.Y.S.2d at 686, finds that this claim has not been exhausted in state court. Because the court finds that this claim is not "patently frivolous," *Hammock*, 224 F. Supp. 2d at 549, it declines to exercise its discretion to decide Petitioner's claim on the merits.

When a claim for ineffective assistance requires the court to analyze matters outside of the record, New York courts have found that defendants must pursue their claim in a collateral attack—through a motion to vacate the judgment under New York Criminal Procedure Law § 440.10. *People v. Brown*, 382 N.E.2d 1149, 1149 (1978) ("Generally, the ineffectiveness of counsel is not demonstrable on the main record . . . . Consequently, in the typical case it would be better, and in some cases essential, that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or postconviction proceeding brought under [New York Criminal Procedure Law] 440.10"); *see also Walker v. Dalsheim*, 669 F. Supp. 68, 70 (S.D.N.Y. 1987) ("The proper procedural vehicle under New York law for raising a claim of ineffective assistance of trial counsel is generally not a direct appeal but a motion to the trial court to vacate the judgment under New York Criminal Procedure Law

Section 440.10. This is so because normally the appellate court has no basis upon which it would be able to consider the substance of such a claim until a record of the relevant facts has been made at the trial court level.").

If a defendant fails to file a § 440.10 motion, federal courts find the claim unexhausted for the purpose of habeas review. *See Otero v. Stinson*, 51 F. Supp. 2d 415, 419 (S.D.N.Y. 1999) ("[Petitioner]'s ineffective assistance of trial counsel motions should have been raised by a [New York Criminal Procedure Law] § 440.10 collateral attack in the trial court. The claim, therefore, was not properly raised in state court and hence is not exhausted."); *Walker v. Miller*, 959 F. Supp. 638, 643-44 (S.D.N.Y. 1997) (finding that an ineffective assistance claim was unexhausted where a § 440.10 motion did not raise all of the ineffective assistance claims raised in the habeas petition).

Here, although Petitioner raised his ineffective assistance claims in his *pro se* brief on direct appeal, *Green*, 984 N.Y.S.2d at 686, he did not file a motion pursuant to New York Criminal Procedure Law § 440.10. As the Appellate Court stated in its decision, "[t]o the extent that defendant asserts in his pro se brief that counsel failed to properly investigate his case and/or bring certain motions upon his behalf, such claims implicate matters outside of the record and, as such, are more properly addressed in a . . . [§] 440 motion." *Green*, 984 N.Y.S.2d at 686. The Appellate Division found that Petitioner's claim had no merit because he failed to collaterally attack his conviction under § 440.10. *Id.*

The court finds that, because the claim implicates off-record matters and Petitioner has not filed a § 440.10 claim, Petitioner's ineffective assistance claim

was not properly raised in state court and, therefore, is not exhausted. Further, the court finds that this claim is not "patently frivolous" and requires further evidentiary inquiry, and thus declines to exercise its discretion to deny habeas relief on the merits. Because Petitioner has failed to exhaust all available state remedies, the court holds that this claim is denied without prejudice.

## II.    Petitioner's Claims Decided on the Merits by the State Court

The court now looks to the claim decided on the merits by the Appellate Division: the insufficiency of evidence to support the jury verdict that Petitioner was guilty of first degree promotion of dangerous contraband. ECF No. 1, at 5, 11-12; *Green*, 984 N.Y.S.2d at 682-85. After reviewing the claim under the highly deferential AEDPA standard, the court denies habeas relief and finds that the Appellate Division reasonably applied established federal precedent in this case.

### A.    Insufficiency of Evidence Claim

Petitioner claims that the evidence presented during his trial was not legally sufficient to support his conviction. ECF No. 1, at 5; ECF No. 12, at 14-15. Specifically, he contends that the prosecution "failed to establish that the cell phone in question constituted dangerous contraband." ECF No 1, at 5; *Green*, 984 N.Y.S.2d at 682. Because the Appellate Division denied this claim on the merits, *id.*, the court analyzes this claim under the deferential AEDPA standard outlined above.

When challenging the evidentiary sufficiency of a state criminal conviction pursuant to 28 U.S.C. § 2254, "if the settled procedural prerequisites for such a claim have otherwise been satisfied . . . the applicant is entitled to habeas corpus

relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *see also Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002). The court must view the evidence in the light most favorable to the prosecution and draw all inferences in its favor. *Ponnapula*, 297 F.3d at 179; *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002); *McCall v. Rivera*, 965 F. Supp. 2d 311, 333 (S.D.N.Y. 2013). Thus, the petitioner "bears a 'very heavy burden' in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence." *Ponnapula*, 297 F.3d at 179 (quoting *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)). The standard is "twice-deferential." *Santone v. Fischer*, 689 F.3d 138, 148 (2d Cir. 2012) (quoting *Parker v. Matthews*, 567 U.S. 37, 43 (2012)); *see also Coleman v. Johnson*, 566 U.S. 650, 651 (2012) ("*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two levels of judicial deference.").

When considering the sufficiency of evidence of a state court conviction, the federal habeas court must "look to state law to determine the elements of the crime." *Ponnapula*, 297 F.3d at 179 (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)). In New York, a person is guilty of promoting dangerous contraband in the first degree when "[h]e knowingly and unlawfully introduces any dangerous contraband into a detention facility" or "[b]eing a person confined in a detention facility, he knowingly and unlawfully makes, obtains, or possesses any dangerous contraband." N.Y. Penal Law § 205.25. The state defines "[d]angerous contraband" as "contraband which is capable of such use as may

25

endanger the safety or security of a detention facility or any person therein." *Id.*

§ 205.00. Any object that is "likely to facilitate escape or cause disorder, damage, or physical injury"—including non-weapons such as alcohol or drawings that could facilitate escape—have been found by the New York Court of Appeals to be "dangerous contraband." *People v. Finley*, 891 N.E.2d 1165, 1171 (N.Y. 2008); *People v. Wilson*, 867 N.Y.S.2d 829, 829-30 (N.Y. App. Div. 4th Dep't 2008). These items may be "perfectly legal outside prison and yet constitute dangerous contraband" when analyzed under this law. *Finley*, 891 N.E.2d at 1172 n.8.

Here, Petitioner claims that the evidence was not sufficient to support his conviction because the prosecution failed to prove that the cell phone constituted "dangerous contraband." ECF No. 1, at 5. The Appellate Division, when analyzing this claim on the merits, found that " 'the distinction between contraband and dangerous contraband' does not turn upon 'whether an item is legal or illegal outside of prison' " and "the item in question need not be inherently dangerous in order to qualify as dangerous contraband." *Green*, 984 N.Y.S.2d at 683 (quoting *Finley*, 891 N.E.2d at 1172 n.8). The Appellate Division further found that "although weapons are perhaps the most commonly recognized source of dangerous contraband," weapons are not the only types of dangerous contraband and that "illegal quantities of drugs," "a disposable Bic lighter" and "hand drawn maps or knotted links of wire that could be used to facilitate an escape" have all been found to be "dangerous contraband." *Id.*

In this case, the Appellate Division found, "upon [its] review of the record as a whole" that "the [prosecution] met their burden of establishing that the cell

phone seized from defendant constituted dangerous contraband." *Id.* at 684. It found that "[i]tems that facilitate an escape are properly considered dangerous contraband because they endanger the safety or security of a facility," *id.* (quoting *Wilson*, 867 N.Y.S.2d at 829), and the "record before [it] contain[ed] specific, competent proof from which the jury reasonably could draw such inferences and conclude that defendant's use of a cell phone would likely create a dangerous situation inside the correctional facility where he was incarcerated," *id.* at 685. This conclusion was based on the Appellate Division's review of superintendent Walsh's testimony that cell phones are banned as a "security measure" and that use of a cell phone can cause a "significant security risk" because it increases the likelihood of criminal activity and escape planning. *Id.* at 684.

The court finds that, under the deferential standards of both the AEDPA and *Johnson,* the Appellate Division was reasonable in its holding that the prosecution met its burden of proving that Petitioner's cell phone constituted "dangerous contraband." Walsh testified during the trial that cell phones pose a security concern primarily because they "allow[] an inmate to bypass some of the protections that are in place to carry out the [facility's] mission of public safety." ECF No. 14, Ex. 1, at 117. Typically "[a]ll phone calls that inmates are authorized to make have the ability to be monitored and/or recorded," and thus "the ability to bypass that system is a significant security risk." ECF No. 14, Ex. 1, at 117. This is because cell phones "would allow a number of things to occur that would present a risk, an escape plan, injury or carrying on criminal activity from inside

27

the institution." ECF No. 14, Ex. 1, at 120-21. Based on Walsh's testimony, and construing all inferences in favor of the prosecution, the jury could reasonably have found that cell phones constitute "dangerous contraband." Accordingly, Petitioner's habeas claim regarding the sufficiency of evidence is denied.

## CONCLUSION

For the reasons stated above, the court denies the instant habeas petition in its entirety. The court finds that three claims—that Petitioner was denied his statutory right to testify before the grand jury, that the court used improper jury instructions during trial, and that Petitioner's counsel provided ineffective assistance—are procedurally barred. Petitioner's ineffective assistance claim is denied without prejudice because Petitioner did not exhaust his state remedies. Further, the claim rejected on the merits by the Appellate Division—the insufficiency of the evidence to support Petitioner's verdict—was a reasonable application of federal precedent, and the court denies habeas relief based on the AEDPA's deferential review. The court respectfully requests the Clerk of Court to mail copies of this opinion and the judgment dismissing this action to Barry A. Green, 95-A-6120 Sullivan Correctional Facility P.O. Box 116, Fallsburg, NY, 12733. The Clerk of Court is further requested to close this case.

SO ORDERED

Dated:  New York, New York
        November 1, 2017

Thomas P. Griesa
U.S. District Judge